

Pillsbury Winthrop Shaw Pittman LLP
1200 Seventeenth Street, NW | Washington, DC 20036 | tel 202.663.8000 | fax 202.663.8007

Matthew J. MacLean
tel: +1.202.663.8183
matthew.maclean@pillsburylaw.com

January 24, 2025

The Honorable Lyle W. Cayce
Clerk of the Court
U.S. Court of Appeals for the Fifth Circuit
600 S. Maestri Place
New Orleans, LA 70130

Re**:** Rule 28(j) Letter in *National Religious Broadcasters v. FCC*, No. 24-60219, and *Texas Association of Broadcasters v. FCC*, No. 24-60226, advising the Court of pertinent and significant Executive Orders

Mr. Cayce:

Earlier this week, President Trump issued the following pertinent and significant Executive Orders:

- *Defending Women from Gender Extremism and Restoring Biological Truth to the Federal Government* (Jan. 20, 2025) ("*Defending Women Order*");

- *Ending Illegal Discrimination and Restoring Merit-Based Opportunity* (Jan. 21, 2025) ("*Ending Discrimination Order*").

The *Defending Women Order* acknowledges the use of "legal and other socially coercive means" to compel recognition of self-proclaimed gender identities "unmoored from biological facts." *Id.* § 1. To address this, it mandates: "Agency forms that require an individual's sex shall list male or female, and shall not request gender identity." *Id.* § 3(e).

The FCC's attempt to require public disclosure of employee data using Form 395-B, with a category for "non-binary" employees, is exactly the kind of "legal and other socially coercive" practice that the President's order forbids. The very

existence of the President's order refutes the FCC's claim that the prospect of public pressure on hiring decisions is "all but entirely speculative." Resp.Br.46.

The President's order also refutes the FCC's argument that compelled public disclosure of gender identity merely "requires reporting of factual information." Resp.Br.53. Whether to categorize an employee as "non-binary," and whether to categorize a self-identified transgender employee as "male" or "female," involve *ideological* questions within the protection of the First Amendment, not just "fact[s]." Petitioners and their members cannot be compelled to speak or conform to the FCC's preferred view on these controversial issues.

Similarly, the *Ending Discrimination Order* requires agencies to "encourage" private companies, like Petitioners and their members, to end "race- and sex-based preferences under the guise of so-called 'diversity, equity, and inclusion' (DEI)," and it raises the prospect of investigations into private companies with DEI programs. *Id.* § 2(b). Like the *Defending Women Order*, the *Ending Discrimination Order* shows how fraught the public categorization of employees by race and sex can be, and how agency action can be responsible for private discrimination. Petitioners and their members cannot be forced to hurl themselves into this political maelstrom, where actors on both ends of the spectrum can marshal enforcement authority and vast public pressure to influence hiring decisions.

Respectfully,

/s/ Jared M. Kelson

Jared M. Kelson
BOYDEN GRAY PLLC
800 Connecticut Ave NW, Suite 900
Washington, DC 20006
(202) 955-0620
jkelson@boydengray.com

*Counsel for Petitioners National Religious Broadcasters and American Family Association*

/s/ Matthew J. MacLean

Matthew J. MacLean
PILLSBURY WINTHROP SHAW PITTMAN LLP
1200 Seventeenth Street, NW
Washington, DC 20036
(202) 663-8183
matthew.maclean@pillsburylaw.com

*Counsel for Texas Association of Broadcasters*

# Attachment 1

PRESIDENTIAL ACTIONS

# DEFENDING WOMEN FROM GENDER IDEOLOGY EXTREMISM AND RESTORING BIOLOGICAL TRUTH TO THE FEDERAL GOVERNMENT

EXECUTIVE ORDER

January 20, 2025

By the authority vested in me as President by the Constitution and the laws of the United States of America, including section 7301 of title 5, United States Code, it is hereby ordered:

Section 1. Purpose. Across the country, ideologues who deny the biological reality of sex have increasingly used legal and other socially coercive means to permit men to self-identify as women and gain access to intimate single-sex spaces and activities designed for women, from women's domestic abuse shelters to women's workplace showers. This is wrong. Efforts to eradicate the biological reality of sex fundamentally attack women by depriving them of their dignity, safety, and well-being. The erasure of sex in language and policy has a corrosive impact not just on women but on the validity of the entire American system. Basing Federal policy on truth is critical to scientific inquiry, public safety, morale, and trust in government itself.

This unhealthy road is paved by an ongoing and purposeful attack against the ordinary and longstanding use and understanding of biological and scientific terms, replacing the immutable biological reality of sex with an internal, fluid, and subjective sense of self unmoored from biological facts. Invalidating the true and biological category of "woman" improperly transforms laws and policies designed to protect sex-based opportunities into laws and policies that undermine them, replacing longstanding, cherished legal rights and values with an identity-based, inchoate social concept.

Accordingly, my Administration will defend women's rights and protect freedom of conscience by using clear and accurate language and policies that recognize women are biologically female, and men are biologically male.

Sec. 2. Policy and Definitions. It is the policy of the United States to recognize two sexes, male and female. These sexes are not changeable and are grounded in fundamental and incontrovertible reality. Under my direction, the Executive Branch will enforce all sex-protective laws to promote this reality, and the following definitions shall govern all Executive interpretation of and application of Federal law and administration policy:

(a) "Sex" shall refer to an individual's immutable biological classification as either male or female. "Sex" is not a synonym for and does not include the concept of "gender identity."
(b) "Women" or "woman" and "girls" or "girl" shall mean adult and juvenile human females, respectively.
(c) "Men" or "man" and "boys" or "boy" shall mean adult and juvenile human males, respectively.
(d) "Female" means a person belonging, at conception, to the sex that produces the large reproductive cell.
(e) "Male" means a person belonging, at conception, to the sex that produces the small reproductive cell.
(f) "Gender ideology" replaces the biological category of sex with an ever-shifting concept of self-assessed gender identity, permitting the false claim that males can identify as and thus become women and vice versa, and requiring all institutions of society to regard this false claim as true. Gender ideology includes the idea that there is a vast spectrum of genders that are disconnected from one's sex. Gender ideology is internally inconsistent, in that it diminishes sex as an identifiable or useful category but nevertheless maintains that it is possible for a person to be born in the wrong sexed body.
(g) "Gender identity" reflects a fully internal and subjective sense of self, disconnected from biological reality and sex and existing on an infinite continuum, that does not provide a meaningful basis for identification and cannot be recognized as a replacement for sex.
Sec. 3. Recognizing Women Are Biologically Distinct From Men. (a) Within 30 days of the date of this order, the Secretary of Health and Human Services shall provide to the U.S. Government, external partners, and the public clear guidance expanding on the sex-based definitions set forth in this order.
(b) Each agency and all Federal employees shall enforce laws governing sex-based rights, protections, opportunities, and accommodations to protect men and women as biologically distinct sexes. Each agency should therefore give

the terms “sex”, “male”, “female”, “men”, “women”, “boys” and “girls” the meanings set forth in section 2 of this order when interpreting or applying statutes, regulations, or guidance and in all other official agency business, documents, and communications.

(c) When administering or enforcing sex-based distinctions, every agency and all Federal employees acting in an official capacity on behalf of their agency shall use the term “sex” and not “gender” in all applicable Federal policies and documents.

(d) The Secretaries of State and Homeland Security, and the Director of the Office of Personnel Management, shall implement changes to require that government-issued identification documents, including passports, visas, and Global Entry cards, accurately reflect the holder’s sex, as defined under section 2 of this order; and the Director of the Office of Personnel Management shall ensure that applicable personnel records accurately report Federal employees’ sex, as defined by section 2 of this order.

(e) Agencies shall remove all statements, policies, regulations, forms, communications, or other internal and external messages that promote or otherwise inculcate gender ideology, and shall cease issuing such statements, policies, regulations, forms, communications or other messages. Agency forms that require an individual’s sex shall list male or female, and shall not request gender identity. Agencies shall take all necessary steps, as permitted by law, to end the Federal funding of gender ideology.

(f) The prior Administration argued that the Supreme Court’s decision in *Bostock v. Clayton County* (2020), which addressed Title VII of the Civil Rights Act of 1964, requires gender identity-based access to single-sex spaces under, for example, Title IX of the Educational Amendments Act. This position is legally untenable and has harmed women. The Attorney General shall therefore immediately issue guidance to agencies to correct the misapplication of the Supreme Court’s decision in *Bostock v. Clayton County* (2020) to sex-based distinctions in agency activities. In addition, the Attorney General shall issue

guidance and assist agencies in protecting sex-based distinctions, which are explicitly permitted under Constitutional and statutory precedent.

(g) Federal funds shall not be used to promote gender ideology. Each agency shall assess grant conditions and grantee preferences and ensure grant funds do not promote gender ideology.

Sec. 4. Privacy in Intimate Spaces. (a) The Attorney General and Secretary of Homeland Security shall ensure that males are not detained in women's prisons or housed in women's detention centers, including through amendment, as necessary, of Part 115.41 of title 28, Code of Federal Regulations and interpretation guidance regarding the Americans with Disabilities Act.

(b) The Secretary of Housing and Urban Development shall prepare and submit for notice and comment rulemaking a policy to rescind the final rule entitled "Equal Access in Accordance with an Individual's Gender Identity in Community Planning and Development Programs" of September 21, 2016, 81 FR 64763, and shall submit for public comment a policy protecting women seeking single-sex rape shelters.

(c) The Attorney General shall ensure that the Bureau of Prisons revises its policies concerning medical care to be consistent with this order, and shall ensure that no Federal funds are expended for any medical procedure, treatment, or drug for the purpose of conforming an inmate's appearance to that of the opposite sex.

(d) Agencies shall effectuate this policy by taking appropriate action to ensure that intimate spaces designated for women, girls, or females (or for men, boys, or males) are designated by sex and not identity.

Sec. 5. Protecting Rights. The Attorney General shall issue guidance to ensure the freedom to express the binary nature of sex and the right to single-sex spaces in workplaces and federally funded entities covered by the Civil Rights Act of 1964. In accordance with that guidance, the Attorney General, the Secretary of Labor, the General Counsel and Chair of the Equal Employment Opportunity Commission, and each other agency head with enforcement

responsibilities under the Civil Rights Act shall prioritize investigations and litigation to enforce the rights and freedoms identified.

Sec. 6. Bill Text. Within 30 days of the date of this order, the Assistant to the President for Legislative Affairs shall present to the President proposed bill text to codify the definitions in this order.

Sec. 7. Agency Implementation and Reporting. (a) Within 120 days of the date of this order, each agency head shall submit an update on implementation of this order to the President, through the Director of the Office of Management and Budget. That update shall address:

(i) changes to agency documents, including regulations, guidance, forms, and communications, made to comply with this order; and

(ii) agency-imposed requirements on federally funded entities, including contractors, to achieve the policy of this order.

(b) The requirements of this order supersede conflicting provisions in any previous Executive Orders or Presidential Memoranda, including but not limited to Executive Orders 13988 of January 20, 2021, 14004 of January 25, 2021, 14020 and 14021 of March 8, 2021, and 14075 of June 15, 2022. These Executive Orders are hereby rescinded, and the White House Gender Policy Council established by Executive Order 14020 is dissolved.

(c) Each agency head shall promptly rescind all guidance documents inconsistent with the requirements of this order or the Attorney General's guidance issued pursuant to this order, or rescind such parts of such documents that are inconsistent in such manner. Such documents include, but are not limited to:

(i) "The White House Toolkit on Transgender Equality";

(ii) the Department of Education's guidance documents including:

(A) "2024 Title IX Regulations: Pointers for Implementation" (July 2024);

(B) "U.S. Department of Education Toolkit: Creating Inclusive and Nondiscriminatory School Environments for LGBTQI+ Students";

(C) “U.S. Department of Education Supporting LGBTQI+ Youth and Families in School” (June 21, 2023);
(D) “Departamento de Educación de EE.UU. Apoyar a los jóvenes y familias LGBTQI+ en la escuela” (June 21, 2023);
(E) “Supporting Intersex Students: A Resource for Students, Families, and Educators” (October 2021);
(F) “Supporting Transgender Youth in School” (June 2021);
(G) “Letter to Educators on Title IX’s 49th Anniversary” (June 23, 2021);
(H) “Confronting Anti-LGBTQI+ Harassment in Schools: A Resource for Students and Families” (June 2021);
(I) “Enforcement of Title IX of the Education Amendments of 1972 With Respect to Discrimination Based on Sexual Orientation and Gender Identity in Light of Bostock v. Clayton County” (June 22, 2021);
(J) “Education in a Pandemic: The Disparate Impacts of COVID-19 on America’s Students” (June 9, 2021); and
(K) “Back-to-School Message for Transgender Students from the U.S. Depts of Justice, Education, and HHS” (Aug. 17, 2021);
(iii) the Attorney General’s Memorandum of March 26, 2021 entitled “Application of *Bostock v. Clayton County* to Title IX of the Education Amendments of 1972″; and
(iv) the Equal Employment Opportunity Commission’s “Enforcement Guidance on Harassment in the Workplace” (April 29, 2024).
Sec. 8. General Provisions. (a) Nothing in this order shall be construed to impair or otherwise affect:
(i) the authority granted by law to an executive department or agency, or the head thereof; or
(ii) the functions of the Director of the Office of Management and Budget relating to budgetary, administrative, or legislative proposals.
(b) This order shall be implemented consistent with applicable law and subject to the availability of appropriations.

(c) This order is not intended to, and does not, create any right or benefit, substantive or procedural, enforceable at law or in equity by any party against the United States, its departments, agencies, or entities, its officers, employees, or agents, or any other person.

(d) If any provision of this order, or the application of any provision to any person or circumstance, is held to be invalid, the remainder of this order and the application of its provisions to any other persons or circumstances shall not be affected thereby.

THE WHITE HOUSE,
January 20, 2025.



**THE WHITE HOUSE**

1600 Pennsylvania Ave NW
Washington, DC 20500

# Attachment 2

PRESIDENTIAL ACTIONS

# ENDING ILLEGAL DISCRIMINATION AND RESTORING MERIT-BASED OPPORTUNITY

January 21, 2025

By the authority vested in me as President by the Constitution and the laws of the United States of America, it is hereby ordered:

Section 1. Purpose. Longstanding Federal civil-rights laws protect individual Americans from discrimination based on race, color, religion, sex, or national origin. These civil-rights protections serve as a bedrock supporting equality of

opportunity for all Americans. As President, I have a solemn duty to ensure that these laws are enforced for the benefit of all Americans.

Yet today, roughly 60 years after the passage of the Civil Rights Act of 1964, critical and influential institutions of American society, including the Federal Government, major corporations, financial institutions, the medical industry, large commercial airlines, law enforcement agencies, and institutions of higher education have adopted and actively use dangerous, demeaning, and immoral race- and sex-based preferences under the guise of so-called "diversity, equity, and inclusion" (DEI) or "diversity, equity, inclusion, and accessibility" (DEIA) that can violate the civil-rights laws of this Nation.

Illegal DEI and DEIA policies not only violate the text and spirit of our longstanding Federal civil-rights laws, they also undermine our national unity, as they deny, discredit, and undermine the traditional American values of hard work, excellence, and individual achievement in favor of an unlawful, corrosive, and pernicious identity-based spoils system. Hardworking Americans who deserve a shot at the American Dream should not be stigmatized, demeaned, or shut out of opportunities because of their race or sex.

These illegal DEI and DEIA policies also threaten the safety of American men, women, and children across the Nation by diminishing the importance of individual merit, aptitude, hard work, and determination when selecting people for jobs and services in key sectors of American society, including all levels of government, and the medical, aviation, and law-enforcement communities. Yet in case after tragic case, the American people have witnessed first-hand the disastrous consequences of illegal, pernicious discrimination that has prioritized how people were born instead of what they were capable of doing.

The Federal Government is charged with enforcing our civil-rights laws. The

purpose of this order is to ensure that it does so by ending illegal preferences and discrimination.

Sec. 2. Policy. It is the policy of the United States to protect the civil rights of all Americans and to promote individual initiative, excellence, and hard work. I therefore order all executive departments and agencies (agencies) to terminate all discriminatory and illegal preferences, mandates, policies, programs, activities, guidance, regulations, enforcement actions, consent orders, and requirements. I further order all agencies to enforce our longstanding civil-rights laws and to combat illegal private-sector DEI preferences, mandates, policies, programs, and activities.

Sec. 3. Terminating Illegal Discrimination in the Federal Government. (a) The following executive actions are hereby revoked:
(i) Executive Order 12898 of February 11, 1994 (Federal Actions to Address Environmental Justice in Minority Populations and Low-Income Populations);
(ii) Executive Order 13583 of August 18, 2011 (Establishing a Coordinated Government-wide Initiative to Promote Diversity and Inclusion in the Federal Workforce);
(iii) Executive Order 13672 of July 21, 2014 (Further Amendments to Executive Order 11478, Equal Employment Opportunity in the Federal Government, and Executive Order 11246, Equal Employment Opportunity); and
(iv) The Presidential Memorandum of October 5, 2016 (Promoting Diversity and Inclusion in the National Security Workforce).
(b) The Federal contracting process shall be streamlined to enhance speed and efficiency, reduce costs, and require Federal contractors and subcontractors to comply with our civil-rights laws. Accordingly:
(i) Executive Order 11246 of September 24, 1965 (Equal Employment Opportunity), is hereby revoked. For 90 days from the date of this order, Federal contractors may continue to comply with the regulatory scheme in

effect on January 20, 2025.

(ii) The Office of Federal Contract Compliance Programs within the Department of Labor shall immediately cease:

(A) Promoting "diversity";

(B) Holding Federal contractors and subcontractors responsible for taking "affirmative action"; and

(C) Allowing or encouraging Federal contractors and subcontractors to engage in workforce balancing based on race, color, sex, sexual preference, religion, or national origin.

(iii) In accordance with Executive Order 13279 of December 12, 2002 (Equal Protection of the Laws for Faith-Based and Community Organizations), the employment, procurement, and contracting practices of Federal contractors and subcontractors shall not consider race, color, sex, sexual preference, religion, or national origin in ways that violate the Nation's civil rights laws.

(iv) The head of each agency shall include in every contract or grant award:

(A) A term requiring the contractual counterparty or grant recipient to agree that its compliance in all respects with all applicable Federal anti-discrimination laws is material to the government's payment decisions for purposes of section 3729(b)(4) of title 31, United States Code; and

(B) A term requiring such counterparty or recipient to certify that it does not operate any programs promoting DEI that violate any applicable Federal anti-discrimination laws.

(c) The Director of the Office of Management and Budget (OMB), with the assistance of the Attorney General as requested, shall:

(i) Review and revise, as appropriate, all Government-wide processes, directives, and guidance;

(ii) Excise references to DEI and DEIA principles, under whatever name they may appear, from Federal acquisition, contracting, grants, and financial assistance procedures to streamline those procedures, improve speed and efficiency, lower costs, and comply with civil-rights laws; and

(iii) Terminate all "diversity," "equity," "equitable decision-making," "equitable deployment of financial and technical assistance," "advancing equity," and like mandates, requirements, programs, or activities, as appropriate.

Sec. 4. Encouraging the Private Sector to End Illegal DEI Discrimination and Preferences. (a) The heads of all agencies, with the assistance of the Attorney General, shall take all appropriate action with respect to the operations of their agencies to advance in the private sector the policy of individual initiative, excellence, and hard work identified in section 2 of this order.

(b) To further inform and advise me so that my Administration may formulate appropriate and effective civil-rights policy, the Attorney General, within 120 days of this order, in consultation with the heads of relevant agencies and in coordination with the Director of OMB, shall submit a report to the Assistant to the President for Domestic Policy containing recommendations for enforcing Federal civil-rights laws and taking other appropriate measures to encourage the private sector to end illegal discrimination and preferences, including DEI. The report shall contain a proposed strategic enforcement plan identifying:

(i) Key sectors of concern within each agency's jurisdiction;

(ii) The most egregious and discriminatory DEI practitioners in each sector of concern;

(iii) A plan of specific steps or measures to deter DEI programs or principles (whether specifically denominated "DEI" or otherwise) that constitute illegal discrimination or preferences. As a part of this plan, each agency shall identify up to nine potential civil compliance investigations of publicly traded corporations, large non-profit corporations or associations, foundations with assets of 500 million dollars or more, State and local bar and medical associations, and institutions of higher education with endowments over 1 billion dollars;

(iv) Other strategies to encourage the private sector to end illegal DEI discrimination and preferences and comply with all Federal civil-rights laws;

(v) Litigation that would be potentially appropriate for Federal lawsuits, intervention, or statements of interest; and
(vi) Potential regulatory action and sub-regulatory guidance.

Sec. 5. Other Actions. Within 120 days of this order, the Attorney General and the Secretary of Education shall jointly issue guidance to all State and local educational agencies that receive Federal funds, as well as all institutions of higher education that receive Federal grants or participate in the Federal student loan assistance program under Title IV of the Higher Education Act, 20 U.S.C. 1070 et seq., regarding the measures and practices required to comply with Students for Fair Admissions, Inc. v. President and Fellows of Harvard College, 600 U.S. 181 (2023).

Sec. 6. Severability. If any provision of this order, or the application of any provision to any person or circumstance, is held to be invalid, the remainder of this order and the application of its provisions to any other persons or circumstances shall not be affected thereby.

Sec. 7. Scope. (a) This order does not apply to lawful Federal or private-sector employment and contracting preferences for veterans of the U.S. armed forces or persons protected by the Randolph-Sheppard Act, 20 U.S.C. 107 et seq.
(b) This order does not prevent State or local governments, Federal contractors, or Federally-funded State and local educational agencies or institutions of higher education from engaging in First Amendment-protected speech.
(c) This order does not prohibit persons teaching at a Federally funded institution of higher education as part of a larger course of academic instruction from advocating for, endorsing, or promoting the unlawful employment or contracting practices prohibited by this order.

Sec. 8. General Provisions. (a) Nothing in this order shall be construed to impair or otherwise affect:

(i) the authority granted by law to an executive department, agency, or the head thereof; or

(ii) the functions of the Director of the Office of Management and Budget relating to budgetary, administrative, or legislative proposals.

(b) This order shall be implemented consistent with applicable law and subject to the availability of appropriations.

(c) This order is not intended to and does not create any right or benefit, substantive or procedural, enforceable at law or in equity by any party against the United States, its departments, agencies, or entities, its officers, employees, or agents, or any other person.

THE WHITE HOUSE,
January 21, 2025.

News

Administration

Issues

THE WHITE HOUSE

1600 Pennsylvania Ave NW
Washington, DC 20500